IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ROBERY A. TERRY, <br>     Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> COMMISSIONER OF THE SOCIAL <br> SECURITY ADMINISTRATION, <br><br>     Defendant. | No.2:18-cv-02100-TLP-jay |

**ORDER AFFIRMING DECISION OF THE COMMISSIONER**

Plaintiff appeals Defendant's denial of his claim for a period of disability and disability insurance benefits. (ECF No. 9-3 at PageID 53.) The Court affirms the Commissioner's decision for the reasons below.

**BACKGROUND**

**I.     Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits in 2014 under Title II, sections 216(i) and 223(d), respectively, of the Social Security Act (ECF No. 9-3 at PageID 53; Transcript. 17),[1] alleging disability because of a herniated disk in his back; multi-joint, neck, and back pain; nerve damage; arthritis; bilateral pulmonary emboli; and leg weakness. (ECF No. 9-7 at PageID 219; Tr. 179.) The relevant time for Plaintiff's Title II claim

---

[1] ECF citations refer to filings on CM/ECF, while Transcript (Tr) refers to the consolidated record.

1

is from the alleged onset date of May 15, 2014, until December 31, 2014, the date when his insured status expired. (ECF No. 9-3 at PageID 53; Tr. 17.) The Administrative Law Judge ("ALJ") applied a five-step sequential evaluation process to determine whether Plaintiff is disabled under 20 C.F.R. § 404.1520(a). (ECF 9-3 at PageID 53–54; Tr. 18–19.)

Applying that process, the ALJ determined that Plaintiff suffered from lumbar and cervical degenerative disk disease. (ECF 9-3 at PageID 54; Tr. 19.) These conditions are severe impairments under 20 C.F.R. § 404.1520(c). Even so, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one in 20 C.F.R. part 404, subpart P, appendix 1 ("appendix 1"). (ECF No. 9-3 at PageID 57; Tr. 22.) The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform light work under 20 C.F.R. § 404.1567 and; therefore, denied his application. (ECF No. 9-3 at PageID 58, 63; Tr. 23, 28.) The Appeals Council denied Plaintiff's request for review (ECF No 9-3 at PageID 37–41; Tr. 1–5.)

Plaintiff now appeals to this Court arguing that the ALJ made a procedural error in processing the application. (ECF No. 11 at PageID at 602.) Plaintiff alleges the ALJ did not have a legitimate basis to deny disability benefits, erred in applying the law, and that the ALJ's decision is unsupported by substantial evidence. (*Id.*)

## II. Relevant Medical Evidence

### A. Back Pain—Medication and Treatment History

Plaintiff took a variety of pain medications to address his alleged back pain over the years. Plaintiff alleges he suffered from severe back pain along with radicular pain in his left leg and arm that he describes as "spiking." (ECF No. 9-3 at PageID 84–85; Tr. 48–49.) His physician, internal medicine specialist Dr. N. Shekoni, treated him from 2012 until May 2014.

(ECF No. 9-8 at PageID 382, 421; Tr. 341, 380.) Dr. Shekoni took a conservative approach to the pain management, having Plaintiff return to the clinic every few months and prescribing several pain medications. (ECF No. 9-3 at PageID 57; ECF No. 9-9 at PageID 362–98, 433–38 551–52; Tr. 22, 324–60, 392–97, 509–10.) That said, Plaintiff reported being in higher levels of pain at times, but Dr. Shekoni told him to continue his existing medications—even when in "extreme distress"—rather than providing Plaintiff new prescriptions, increasing dosages, ordering additional treatment, or requiring Plaintiff to return to the clinic more often. (ECF No. 9-8 at PageID 337–61; Tr. 296–320.) There is nothing the record to suggest this treatment was insufficient. In fact, pharmacy records show that Plaintiff failed to fill his prescription for one of the medications on its scheduled dates. (ECF No. 9-9 at PageID 551–52.; Tr. 509–510.) He also reported medication usage inconsistent with his refill history to his consulting physician, family medicine specialist Dr. Randall Wisdom, when telling how he addressed pain which radiated to his left foot, perineal region, and both arms (ECF No. 9-8 at PageID 461; Tr. 420.)

  **B.**  **Mental Impairments**

In 2015, clinical psychologist Dr. Yvonne Osborne evaluated Plaintiff's mental condition. (ECF No. 9-8 at PageID 475; Tr. 434.) She noted that Plaintiff had mild impairments in socially interacting and concentrating; persisting or maintaining pace; and a moderate impairment in adapting to changes in a work setting. (ECF No. 9-3 at PageID 55–57, 474–77; Tr. 20–22, 434–37.) Yet Plaintiff's admission in his function report during the relevant period describing himself as "mutable" and that he handled stress "fairly well" contradicts Dr. Osborne's later finding of moderate impairment. (ECF No. 9-7 at PageID 237; Tr. 197.) The consulting medical examiner Dr. Janise Hinson largely concurred with Dr. Osborne's findings,

3

except that she found Plaintiff had only a mild impairment in adapting to changes. (ECF No. 9-4 at PageID 129-130; Tr. 91–92.)

      **C.**      **Physical Impairments**

Plaintiff's lumbar issues began in 2009 when he underwent an L4-L5 discectomy. (ECF No. 9-8 at PageID306; Tr. 265.) Later, additional imaging taken when Plaintiff was in a car accident revealed minimal C5-6 intervertebral disc space narrowing and mild L4-5 degenerative disk disease. (*Id.*) An MRI of the lumbar spine revealed a minor, stable perineural scar at the L4-5 vertebrae and a slight progression of his degenerative disk disease. (ECF No. 9-8 at PageID 302–07; Tr. 261–66.) That said, the central canal and right foramen were normal, and the upper lumbar segments had no disk abnormality. (*Id.*) An MRI of the of the cervical spine showed mild C5–6 spondylosis with no significant canal stenosis, no significant compromise of the right neural foramen, and that the left neural foramen was widely patent. (*Id.*)

During the period at issue in 2014, Plaintiff participated in a consultative examination with Dr. Wisdom. (ECF No. 9–8 at PageID 460; Tr. 419.) Among other findings, Dr. Wisdom noted Plaintiff had a normal range of motion in both the upper and lower extremities, had good muscle strength and 5/5 grip strength, and could reach overhead in all directions. (ECF No. 9–8 at PageID 460–70; Tr. 419–29.)

But Plaintiff alleges his pain did not improve. So he sought emergency treatment in 2014 due to back pain. (ECF No. 9-9 at PageID 563; Tr. 521.) Medical imaging performed at the time revealed degenerative changes in the lumbar spine without acute findings. (*Id.*) That same month, a cervical x-ray revealed early degenerative disk disease with normal curvature and no acute findings. (ECF No. 9-8 at PageID 458; Tr. 417.) And a lumbar x-ray showed moderate degenerative disk disease with minimal scoliotic curve in the lumber spine. (ECF No. 9-8 at

PageID 459; Tr. 418.) The ALJ found that since these images showed no compromise of a nerve root or spinal cord, the treatment records did not support Plaintiff's allegations of pain and the limitations that comes with them. (ECF No. 9-3 at PageID 62; Tr. 26.)

Plaintiff also argues that he had a shoulder injury in 2015. But the ALJ properly chose not to consider Plaintiff's alleged shoulder injury since the relevant period ended on December 31, 2014. (ECF No. 9-3 at PageID 56; ECF No. 9-9 at PageID 556; Tr. 20, 514.)

## **STANDARD OF REVIEW**

Courts evaluate an ALJ's social security decision with a deferential standard. "In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and thereby entitled to benefits." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing 42 U.S.C. § 405(h) (2018)). The district court's review of that determination "is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id*. (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Substantial evidence requires more than a mere scintilla, but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks and citations omitted). "[I]f substantial evidence supports the ALJ's decision, [the] [c]ourt defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding

under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."). That said, the reviewing court must find a lack of substantial evidence when the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (internal citation and quotation marks omitted).

## ANALYSIS

**I.     The Disability Test**

Under the Social Security Act, the first question is whether Plaintiff is disabled. Congress defined "[d]isability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ uses a five-step evaluation to determine whether a person has a disability under the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(i–v). The applicant bears the burden of proving the first four steps. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)). But, at the fifth step, "[t]he burden of proof shifts to the Commissioner . . . [to prove] that there is work available in the economy . . . " that Plaintiff can perform. *Her*, 202 F.3d at 391.

The ALJ first looks at whether the applicant is currently engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(a). SGA is "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a)(4)(i). If applicant is engaged in SGA, then the analysis ends there. *See* 20 C.F.R. § 404.1520(a)(4)(i).

The ALJ then analyzes in the second step whether the applicant has a medically determinable impairment, or a combination of impairments, that meets the definition of "severe."

*See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly curtails the person's ability to perform basic work activities. *See* 20 C.F.R. § 416.21. But the impairment is not severe if the medical information establishes only a "slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.*

Third, the ALJ must determine whether the applicant's impairments either meet or medically equal the criteria of an appendix 1 listing. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the applicant is disabled. *Id*. If not, then the ALJ determines the applicant's "residual functional capacity" ("RFC") to perform past work. 20 C.F.R. § 404.1545. RFC refers to an individual's ability to do physical and mental work on a sustained basis despite the limitations from the impairments. 20 C.F.R. § 404.1520(e).

Fourth, if he has the RFC to perform the requirements of his past relevant work, the applicant is not disabled, and the analysis ends here. *See* 20 C.F.R. § 404.1520(a)(4)(iv). But if the applicant does not have the RFC, then the analysis goes on to the fifth and final step. *Id*. Finally, if the ALJ determines the applicant does not have adequate RFC then the ALJ will evaluate the applicant's ability to do any other work given his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the applicant cannot perform other work, then he qualifies as disabled. *Id.*

## II. Substantial Evidence Supports the ALJ's Determinations

While Plaintiff is undisputedly not engaged in substantial gainful activity, satisfying step one, Plaintiff argues that the ALJ erred in its determination about the severity of Plaintiff's impairments in step two. (ECF No. 11 at PageID 604, 606–07.) Plaintiff contends that when the ALJ refused to recognize mental impairments and nerve damage as "severe," that the ALJ gave

7

too much weight to the consulting physicians' findings and gave too little weight to those physicians who examined Plaintiff. (*Id.*) He says that the ALJ "attempted to discredit the consultative physicians by nothing more than speculation." (ECF No.11 at PageID 606.) This Court finds Plaintiff's arguments unpersuasive and finds that substantial evidence supports the ALJ's determinations.

ALJs must weigh medical opinions, and they "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i). Instead, the ALJ evaluates these experts' findings and decides which expert "wins." *Justice v. Comm'r Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). Here, the ALJ properly fulfilled his role by resolving the conflict between disputing experts. Dr. Osborne, who performed the mental status examination on Plaintiff, determined that he had mild impairments in concentration, persistence, and pace, and social interaction; and a moderate impairment in adapting to change. (ECF No. 9-8 at PageID 478; Tr. 437.) Dr. Janise Hinson found that all of Plaintiff's impairments, including his ability to adapt to social change, were only mild. (ECF No. 9-3 at PageID 56–57; Tr. 21–22, 91–92.)

Dr. Osborne's findings contradicted Plaintiff's own assessment that he was "mutable" and handled stress "fairly well." (ECF No. 9-7 at PageID 237; Tr. 197.) *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 389 (6th Cir. 2004) (finding that the ALJ properly disregarded the doctor's conclusions when they contradicted Plaintiff's own testimony). In contrast, Dr. Hinson's opinion was supported by the record. (ECF No. 9-3 at PageID 57; ECF No. 9-7 at PageID 237; Tr. 22,97.) Citing *Walker v. Secretary of H.H.S,* 980 F.2d 1066, 1071–72 (6th Cir. 1992), Plaintiff argues that the ALJ must defer to the examining physician and should give valid reasons before granting greater weight to a non-examining physician. Here the ALJ had valid

reasons for relying on Dr. Hinson's opinion. Above all, the doctors considered most of Plaintiff's mental impairments "mild" and Plaintiff received no treatment or medication for mental impairments. (ECF No. 9-4 at PageID 129; Tr. 92). And so Plaintiff cited no medical evidence to the contrary. Thus, this Court finds that substantial evidence supports the ALJ's determination. (ECF No. 9-3 at PageID 57; Tr. 22.)

Plaintiff also seems to argue that the ALJ should have considered nerve damage a severe impairment. (ECF No.11 at PageID 604.) Plaintiff then asserts without support in the record or from caselaw that "evidence of a surgery or dislocation proves more than adequate objective medical evidence to support a claimant's complaints of continued pain." (*Id.*) Indeed, x-rays of the lumbar and cervical spine in the record show no indications of nerve damage. (ECF No. 9-8 at PageID 458–59; Tr. 26, 417, 418.) The Court need not speculate here. The ALJ correctly determined that any potential nerve damage was not severe.

Because he determined that Plaintiff had at least one severe impairment, the ALJ next assessed Plaintiff's ability to work. In the assessment, the ALJ considered if all impairments in combination would leave Plaintiff unable to work. Since the ALJ followed the correct procedure by specifically mentioned that he analyzed the impairment as a whole, the failure to find additional severe impairments is not a reversible error or grounds for remand. *See Fisk v. Astrue*, F. App'x 580, 583 (6th Cir. 2007); *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005).

### III. Substantial Evidence Supports The ALJ's Medical Equivalence Analysis

In step three of the disability analysis, the ALJ determines whether the applicant's impairments either meet or medically equal the criteria of an appendix 1 listing. 20 C.F.R. § 404.1520(a)(4)(iii). Plaintiff argues that the ALJ incorrectly applied the policy of medical

9

equivalence by giving only "lip service" to the totality of impairments when determining whether they equaled a listing-level impairment. (ECF No. 11 at PageID 6.) That said, Plaintiff's analysis exhibits several flaws.

First, Plaintiff fails to show which of the many potential appendix 1 listings his impairments equal. *Id.* Second, Plaintiff's claims that the ALJ failed to "take a step back" and see how the impairments "make the other symptoms feel more severe." Third, Plaintiff alleges that the ALJ erred by not specifying each individual impairment considered in combination. These arguments both misstate the requirements of 20 C.F.R. § 404.1526 and contradict modern caselaw. (ECF No. 11 at PageID 6–7.) That regulation "does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2011). In *Bledsoe*, the Sixth Circuit affirmed the ALJ's decision even though he did not repeat all the facts in step three because the ALJ had once described the medical evidence, made findings of fact, and stated that he considered all the impairments together. 165 F. App'x at 411. Similarly, here the ALJ stated his findings were based on "careful consideration of the entire record" (ECF 9-3 at PageID 54; Tr. 19) and his decision discusses each impairment in detail during the step two analysis. (ECF 9-3 at PageID 54–57; Tr. 19–22.)

Additionally, the ALJ's heading for the step three analysis specifically says that Plaintiff did not have a "combination of impairments" that equaled a listing. (ECF No. 9-3 at PageID 57; Tr. 22.) One of Plaintiff's own cited cases supports this notion, saying "the fact that each element of the record was not discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the claimant] did not meet the 'listings.'" *Gooch*

*v. Sec'y of H.H.S.*, 833 F.2d 589, 592 (6th Cir. 1987). Requiring the ALJ to spell out each step-three factor's weight would lead to a heightened articulation standard that would be inconsistent with Sixth Circuit precedent. *Bledsoe*, 165 F. App'x at 411. Since Plaintiff does not argue that the ALJ erred in not finding a specific equivalent disability listing, and the ALJ properly considered all impairments in accordance with regulations and caselaw, substantial evidence supports the finding that Plaintiff did not equal a listing level impairment. (ECF 9-3 at PageID 54–57; Tr. 19–22.)

## IV. The ALJ Properly Found that Plaintiff Could Perform a Full Range of Light Work

Even though it is not listing level, because Plaintiff has a severe impairment, the ALJ (and now the Court) moves to the fourth step of the disability analysis. This step calls for the ALJ to assess Plaintiff's Residual Functional Capacity ("RFC") to work despite the combined effects of all of their limitations supported by the record. 20 C.F.R. § 404.1545. To do so, the ALJ applied a two-step process. (ECF No. 9-3 at PageID 58; Tr. 23.) First, he analyzed the "medically determinable physical or mental impairment[s] that could reasonably be expected to produce [claimants] symptoms, such as pain." 20 C.F.R. § 404.1529(b). Second, the ALJ evaluated the severity of the symptoms to determine how they limited Plaintiff's ability to function. 20 C.F.R. § 404.1529(c)(1). In doing this, the ALJ compared the objective medical evidence with Plaintiff's statements to determine whether there were inconsistencies in the evidence and if there were conflicts between Plaintiff's statements and the evidence. 20 C.F.R. § 404.1529(c)(2).

Plaintiff argues that the ALJ's finding that he could perform full range of light work is unsupported by the record, that the ALJ gave improper weight to competing expert opinions, and that the ALJ improperly considered the weight of Plaintiff's subjective pain. (ECF No. 11 at

11

PageID 7–9.) Yet this Court finds that the ALJ's determinations are supported by substantial evidence.

For instance, while the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms, he also determined that Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms" are inconsistent with medical evidence. (ECF No. 9-3 at PageID 59; Tr. 24.) When such inconsistencies are present, "an ALJ may properly consider the credibility of the claimant." *Walters v. Comm'n of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's credibility findings are "accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). To evaluate subjective complaints of disabling pain, the ALJ evaluates:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions.

*Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014) (citing C.F. R. § 404. 1529(c)(1)–(3)).

If an applicant's claims "regarding symptoms, or their intensity and persistence, are not supported by the objective medical evidence, the ALJ must make a determination of the credibility of the applicant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers v. Comm'r of Soc. Sec.*, 484 F.3d 234, 248 (6th Cir. 2007). The ALJ must "explain his credibility determinations in his decision such that it 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

12

adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* (citing SSR 96-7P). The ALJ's credibility assessment is "virtually unchangeable" if the ALJ cites substantial, "legitimate evidence to support his conclusions." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012); *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013).

The ALJ here appropriately found that Plaintiff's allegations of pain were unsupported by medical evidence. (ECF No. 9-3 at PageID 61; Tr. 26.) While Plaintiff alleged significant issues with movement, physical examinations show Plaintiff had a normal gait, intact tandem walking, normal ranges of motion, full strength, and intact sensations. (ECF No. 9-3 at PageID 88; ECF No. 9-8 at PageID 463; ECF No. 9-9 at PageID 594; Tr. 52, 422, 552.) Additionally, lumbar and cervical x-rays during the relevant period found that Plaintiff had only moderate degenerative disk disease and early degenerative disk disease, respectively. (ECF No. 9-8 at PageID 458–59; ECF No. 9-9 at PageID 594; Tr. 417–18, 552.)

The ALJ determined that these images, as well as those taken before the onset period, showed no nerve root or spinal canal compromise to back up Plaintiff's claims of radiating pain. (ECF No. 9-3 at PageID 59; ECF No. 9-8 at PageID 292–93, 303, 305; Tr. 24, 26, 251–52, 263, 265.) These objective images even more support the ALJ's determination that Plaintiff could perform light work. *See Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016) (holding that diagnostic evidence revealing mostly mild-to-moderate findings and no significant degeneration supported ALJ's RFC determination). Although not mentioned in the RFC analysis, Plaintiff's appearance and behavior during examinations further suggest he did not have a severe mental impairment. (ECF No. 9-8 at PageID 427, 431, 462, 467, 475; ECF No. 9-9 at PageID 562; Tr. 386, 390, 421, 426, 434, 520.) *See Stankoski v. Astrue*, 532 F. App'x 614, 619

(6th Cir. 2013) (finding that Plaintiff's claim of severe disability was unsupported by objective medical evidence).

That said, objective evidence alone cannot discredit subjective claims of pain. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2015). But that evidence combined with medical opinions has been enough to undercut such claims. *Id*. The ALJ properly weighed the expert opinions and gave sufficient reasoning for his decision when he evaluated Plaintiff's RFC and subjective claims of pain. Plaintiff argues that the ALJ improperly discredited consultative physicians by mere speculation and gave too much weight to non-examining physicians' opinions. (ECF No. 11 PageID at 606–07.) Plaintiff refers to Dr. Randall Wisdom, who performed a consultative examination. He opined that Plaintiff could lift five pounds, sit for two hours at a time for a total of seven hours during a workday, and stand for twenty minutes at a time for a total of two hours in a workday. He also opined that Plaintiff could walk for ten minutes at a time for a total of ninety minutes during a work day, sometimes reach overhead, often reach in other directions, and could sometimes "weakly" push with his arms. (ECF No. 9-8 at PageID 461–470; Tr. 420–429.) In contrast, state agency medical consultants Dr. Thomas Jeffcoat and Dr. William Hand reviewed the medical record and opined that Plaintiff could perform light work with occasional stooping. (ECF No. 9-4 at PageID 94–102; ECF; No. 9-8 at PageID 471; Tr. 57–65, 421.) In his analysis, the ALJ gave little weight to Wisdom's opinion and partial weight to Jeffcoat and Hand's opinions. (ECF No. 9-3 at PageID 63; Tr. 27.)

The ALJ properly gave Wisdom's opinion little weight, as it was unsupported by the record, was inconsistent with objective imaging and prescription records and his own examination. And those opinions suggest that the doctor provided many opinions in response to

14

the claimant's display of pain during the examination. (ECF No. 9-8 at PageID 461; Tr. 420.) For example, Wisdom opined that Plaintiff was limited to occasional overhead reaching and frequent reaching in other directions. But his own examination showed that Plaintiff could reach overhead in all directions. (ECF No. 9-3 at PageID 63; ECF No. 9-8 at PageID 462–63, 466; Tr. 27, 421–22, 425.) And Wisdom opined that Plaintiff could weakly push and pull at times, but Plaintiff showed "good strength" during the examination. (ECF No. 9-8 at PageID 461, 465; Tr. 422, 426.) In contrast, the state medical consultants' opinions were generally supported by the record, and the ALJ properly gave those opinions partial weight. (ECF No. 9-3 at PageID 63; Tr. 27.) *See Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir.2004) ("[S]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.")

Plaintiff's treatment history also supports the ALJ's findings. *See Curler,* 561 F. App'x at 473 (noting that an ALJ can consider Plaintiff's lack of treatment when evaluating their credibility about the severity of their impairments); *Helm v. Comm'r of Soc. Sec,* 405 F. App'x 997, 1001 (6th Cir. 2011) (holding that modest treatment was "inconsistent with a finding of total disability). After his 2009 back surgery, Plaintiff relied on conservative treatment with no major change in pain medication prescriptions, type of treatment, or frequency of treatment. (ECF No. 9-8 at PageID 365–401, 433–38; Tr. 324–360, 392–97.) Even when Plaintiff complained of greater levels of pain, his doctor largely instructed him to continue his medication and treatments rather than new or higher doses of prescriptions, undertaking new treatments, or increasing how often he visited his doctor. (ECF No. 9-8 at PageID 337–61; Tr. 296–320.) Plaintiff also stopped his treatments with Dr. N. Shekoni four months after his alleged onset date.

(ECF No. 9-8 at PageID 421; Tr. 380.) This evidence reveals that Plaintiff's pain was manageable. And his subjective complaints of pain did not concern his treating physician.

The ALJ also correctly considered Plaintiff's non-compliance with his prescription regimen when assessing credibility. *See Ranelllucci v. Astrue*, No. 3:11-CV-00640, 2012 WL 4484922, *11 (M.D. Tenn., Sept. 27, 2012) (citing *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (stating that an ALJ may consider noncompliance with treatment when assessing credibility). Plaintiff's pharmacy records show that he did not consistently fill one of his pain prescriptions. (ECF No. 9-8 at PageID 462; ECF No. 9-9 at PageID 551–52; Tr. 421, 509–10.) Since Plaintiff provided no evidence that financial constraints prevented him from filling his Lyrica prescription, logic dictates that he would have either gone long periods without taking that pain medication or he did not take the correct dosage. That Plaintiff still would have had "gaps" where he was unmedicated does not erase his own failure to fill his prescription. (ECF No. 9-3 at PageID 62; Tr. 26.)

Lastly, Plaintiff's additional arguments on behalf of his credibility are not persuasive. Plaintiff cites to *Carrier v. Sullivan*, 944 F.2d 243, (5th Cir. 1991) to argue that subjective complaints which are recorded in a physician's notes are automatically given credibility. (ECF No. 11 at PageID 610.) But Plaintiff's cited case does not contain this proposition. Plaintiff also argues that his 2015 shoulder injury should be considered since its cause is unknown. Plaintiff provided no relevant caselaw to support this claim. As previously mentioned, the ALJ properly disregarded Plaintiff's complaints of shoulder pain since it was reported after the relevant time period. (ECF No. 9-3 at PageID 56; ECF No. 9-9 at PageID 556; Tr. 20, 514.)

After taking the above factors and others required by 20 C.F. R. § 404.1529(c)(1)–(3) into account, substantial evidence supports the ALJ's properly determined finding of Plaintiff's RFC.

## V. The ALJ Properly Found that Plaintiff Could Perform a Full Range of Light Work

Substantial evidence supports the ALJ's finding that Plaintiff could perform a full range of light work existing in significant numbers in the national economy. 20 C.F.R. § 404.1565, 404.1569, 404.1569(a). Based on Plaintiff's RFC, age, education, and work experience along with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that Plaintiff possessed the ability to meet all or substantially all the demands of light work. By considering the factors above, the ALJ properly concluded that Plaintiff could perform a full range of light work, and thus was not disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2, Medical-Vocational Rule 202.2.

## **CONCLUSION**

For all these reasons, the Court AFFIRMS the Commissioner's decision that Plaintiff Robert A. Terry is not disabled under the Social Security Act.

**SO ORDERED,** this 2nd day of August, 2019.

s/Thomas L. Parker<br>
THOMAS L. PARKER<br>
UNITED STATES DISTRICT JUDGE